UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AMBER JORDAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-cv-00035-SNLJ |
| ) | |
| CHARTER COMMUNICATIONS, INC., ) | |
| DELISSA SPENCER, and ) | |
| JERRY SHERWIN ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on plaintiff's motion to remand (#14). The issues have been fully briefed. For the reasons that follow, this Court will **GRANT** plaintiff's motion and will **REMAND** this matter back to the Circuit Court for St. Louis County, Missouri. All other pending motions are **DENIED AS MOOT**.

**I. BACKGROUND**

**A. Plaintiff's Underlying Claims**

Plaintiff, a Missouri citizen, brings three claims against defendants for gender discrimination and retaliation under the Missouri Human Rights Act ("MHRA"), RSMo. § 213.010 *et seq.*, and for violation of the public policy exception to at-will employment under Missouri common law. Defendant Charter Communications, Inc. is plaintiff's former employer, who the parties do not dispute is a Delaware limited liability company with its principal place of business in Connecticut. Defendant Jerry Sherwin was one of plaintiff's supervisors, who the parties agree is a Missouri citizen. Defendant Delissa

1

Spencer was another of plaintiff's supervisors (her "direct supervisor"), who the parties agree is also a Missouri citizen.

Plaintiff worked for Charter as a call center representative. While working as a temporary employee, she alleges she was the victim of workplace sexual harassment sometime between December 2016 and January 2017. Specifically, "male co-workers would hold up numbered paddles when plaintiff and other women would walk by them. These paddles were numbered to rate the attractiveness of the women's body on a scale of 1-10." This made plaintiff uncomfortable. And so, she reported this conduct to her director supervisor, Spencer, who "responded by laughing [and telling] plaintiff it was 'just a harmless way of passing the time.'" Co-workers were also allegedly "passing around sex tapes or other inappropriate photographs" of fellow employees, and would "regularly hav[e] sexually inappropriate conversations in the workplace." Plaintiff, again, attempted to report these additional activities, this time to both Sherwin and Spencer; but, she says they "failed to make a reasonable investigation." After this second report, Spencer allegedly came to plaintiff and told her not to make any more complaints 'because Spencer's job was on the line." A few days later, plaintiff was suspended, and then was eventually terminated on February 20, 2017. The reason for her termination was purportedly because she was involving in an altercation with another employee. Plaintiff, though not denying an altercation happened, says "this altercation was not inappropriate" and points out that only she was terminated, while "other members of the group involved in the alleged altercation … were not disciplined."

In addition to the issues of sexual harassment, plaintiff states Charter began engaging in "illegal activity" after directing its employees to add $4.99 "wire maintenance fees" to customers' accounts without their consent or knowledge. These fees purportedly covered the "cost of troubleshooting and repairing communication wires inside a customer's home," but were considered "an add-on [that] is not part of the standard service package." Plaintiff, who was allegedly told by Spencer to add these fees to customers' accounts, attempted to voice her concerns to Sherwin who acknowledged that such activity was illegal and to stop.

**B. Defendant Charter's Removal from State Court**

Charter removed this action from the Circuit Court of St. Louis County, Missouri, on the basis that Sherwin and Spencer have been fraudulently joined. The existence of either of them as party-defendants would defeat diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Charter provides four reasons why the fraudulent joinder doctrine should apply: (1) plaintiff failed to plead sufficient facts against Sherwin and/or Spencer to substantiate claims against them for gender discrimination and/or retaliation; (2) claims cannot be made against Sherwin or Spencer under the MHRA because the 2017 amendments to that Act prohibit individual liability and plaintiff's claim "accrued" after these amendments took effect; (3) the determination of Spencer's citizenship, who plaintiff has had difficulty locating and serving, is not yet known and therefore Charter believes discovery should be done on this issue before remand is considered; and (4) plaintiff did not exhaust administrative remedies against Sherwin because Sherwin was not a named party in the underlying charge with the Missouri Commission on Human Rights.

The exhaustion-related claim involving Sherwin present complicated legal questions that are best addressed by the state courts, if possible. *See Filla v. Norfolk Southern Ry. Co.*, 336 F.3d 806, 811 (8th Cir. 2003). Because this Court finds that the motion to remand can be decided solely upon the claims against Spencer, the exhaustion-related claims against Sherwin need not and will not be addressed.

## II. ANALYSIS

### A. Standards for Applying the Fraudulent Joinder Doctrine

Fraudulent joinder is defined as "the filing of a frivolous or otherwise illegitimate claim against a non-diverse defendant solely to prevent removal." *Filla,* 336 F.3d at 809. "Joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendants." *Id.* at 810 (*quoting Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)). A plaintiff "cannot defeat a defendant's right of removal by joining a defendant who has 'no real connection to the controversy.' " *Herkenhoff v. Supervalu Stores, Inc.*, 2014 WL 3894642 at *2 (E.D. Mo. Aug. 8, 2014) (quoting *Donner v. Alcoa, Inc.*, 709 F.3d 694, 697 (8th Cir. 2013)). "[I]t is well established that if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Filla*, 336 F.3d at 810 (quoting *Iowa Public Service Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977) (emphasis in original)). However, if there is a "colorable" cause of action against the defendant, "that is, if the state law *might* impose liability on the resident defendant under the facts alleged" then there is no fraudulent joinder. *Id*. (emphasis in original). Indeed, "[a]ll

doubts about federal jurisdiction should be resolved in favor of remand to state court." *Block v. Toyota Motor Corp.*, 665 F.3d 944, 948 (8th Cir. 2011). In accomplishing its task of considering how the fraudulent joinder doctrine affects its subject-matter jurisdiction, a court is not to engage in the merits of a dispute. *See Wivell v. Wells Fargo Bank, N.A.,* 773 F.3d 887, 896 (8th Cir. 2014).

    B.  The Sufficiency of Pleading Issue

Pointing to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), Charter first argues that Spencer has been fraudulently joined because plaintiff fails to state sufficient facts in her complaint for which to sustain viable claims of gender discrimination and/or retaliation against Spencer. Although Charter's argument sounds in a Rule 12(b)(6) motion, "the standard to survive a Rule 12(b)(6) motion to dismiss is more demanding than the *Filla* 'reasonable basis' standard applied in challenges to a finding of fraudulent joinder." *Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 918 (8th Cir. 2014); *see also Wivell,* 773 F.3d at 896; *Filla*, 336 F.3d at 811. Even if *Iqbal* and *Twombly* were relevant, however, this Court finds they would be satisfied here.

The primary requirement of these cases is that the pleading must offer more than "naked assertions" and "unadorned, the-defendant-unlawfully-harmed-me accusations." *Iqbal*, 556 U.S. at 678. In considering the retaliation claim, for example, plaintiff must allege facts touching upon and supporting three elements: (1) that she complained of discrimination; (2) that her employer took adverse action against her; and (3) a causal relationship between complaint and adverse action. *Holmes v. Kansas City Pub. Sch.*

5

*Dist.*, -- S.W. --, 2018 WL 6492727 at *4 (Mo. App. W.D. 2018); *see also Reed v. McDonald's Corp.*, 363 S.W.3d 134, 139 (Mo. App. E.D. 2012) (stating that liability can be imposed against individuals who "directly oversaw or were actively involved in the discriminatory conduct"). Plaintiff alleges that she voiced her concerns about sexual harassment (both as to the "sex tapes" and "paddles" used to rate attractiveness) to Spencer, which she maintains was "a contributing factor in [Charter's] decision to terminate [her] employment." She states that text messages and a workplace corrective action report indicate Spencer may have falsely reported that plaintiff made threats against another co-worker. This falsehood, plaintiff explains, was made in order "to get rid of plaintiff a few days after warning [her] 'not to make any more complaints because Spencer's job was on the line.'" These facts touch upon the three elements of an MHRA retaliation claim and explain Spencer's role for purposes of individual liability—they are sufficient under *Iqbal* and *Twombly*.

More importantly, however, these allegations are enough to pass the lower threshold of *Filla,* requiring the Court to determine whether there is a "reasonable basis" for concluding a state court might impose liability. *Filla*, 336 F.3d at 810. Because a claim exists that might impose liability against a non-diverse party, at least in the context of pleading sufficiency, this Court need not consider the other claims against Spencer.

**C. The Individual Liability and Accrual Issues**

Next, separate from the issue of pleading sufficiency, there is the question of whether individual liability can be imposed at all against Spencer under the MHRA. The MHRA was amended in several respects in early 2017, with an effective date of August

28, 2017. Section 213.010(8)(c), in particular, was added to expressly prohibit individual liability under the MHRA, which was accomplished by redefining the term "employer" to exclude "an individual employed by an employer." § 213.010(8)(c), *RSMo*. The parties do not dispute that this provision cannot be applied retroactively, as this has been the recent conclusion of both this Court and the Missouri Court of Appeals. *Billingsley v. Rich Logistics, LLC.*, 2018 WL 1924339 (E.D. Mo. Apr. 24, 2018); *Bram v. AT&T Mobility Servs., LLC.*, 564 S.W.3d 787, 795 (Mo. App. W.D. 2018). The only question is *when* plaintiff's claims accrued. Thus, Charter—assuring the Court that it does not seek retroactive application—explains the new amendments must nonetheless apply because "an MHRA claim accrues at the time the notice of right to sue is issued," which in this case occurred on November 19, 2018.

Charter concedes that another judge of this Court has already disagreed with that position. Judge Perry, while acknowledging "no Missouri court has address the [accrual] issue," held last year that an MHRA claim accrues on the date the allegedly discriminatory conduct took place. *See Marshall v. Walgreen Co.*, 2018 WL 3025813 at *2 (E.D. Mo. Jun. 18, 2018) (Perry, J.). Judge Perry reached this conclusion based on the fact that the MHRA is modeled after federal anti-discrimination laws, which have been construed to base the accrual of an action on the manifestation of an underlying adverse action rather than when a right-to-sue letter is issued. *Id.* In fact, it was also pointed out that the MHRA appears to purposefully align itself with this federal framework, as the MHRA's statute of limitation provision focuses on when "the *alleged cause occurred* or

its reasonable discovery by the alleged injured party." *Id*. (citing § 213.111.1, *RSMo.* (emphasis added)).

Charter asks this Court to now disagree with *Marshall*'s holding because of Missouri case law indicating, in other contexts, that a claim accrues only when the right-to-sue arises. *See, e.g.*, *State ex rel. Beisly v. Perigo*, 469 S.W.3d 434, 437 (Mo. banc. 2015) (considering a claim under Missouri's wrongful death statute and stating "a cause of action accrues … when the right-to-sue arises"); *Coleman v. Kansas City*, 182 S.W.2d 74, 78 (Mo. 1944) (considering a claim to recover a balance due on a current account and stating "a cause of action accrues the moment the right to commence an action comes into existence."). Whatever weight might be given to the right-to-sue-type language found in *Beisly* and *Coleman,* both opinions are careful to state they are speaking "generally" as to when an action accrues, and both narrowly tie their conclusion to the accrual of the applicable statute of limitations. *Beisly*, 469 S.W.3d at 437 ("*Generally* a cause of action accrues [] when the right to sue arises. *Accrual also triggers the running of the statute of limitations*." (emphasis added)); *Coleman*, 182 S.W.2d 74 ("It may be state as a *sound general principle* that a cause of action accrues the moment the right to commence an action comes into existence, *and the statute of limitations commences to run from that time*." (emphasis added)). And, as Judge Perry points out, the MHRA's statute of limitation provision—by focusing on when "the alleged cause occurred"—appears to adopt the federal rule that accrual of a claim begins at the occurrence of an adverse action, such as termination or demotion. *Marshall*, 2018 WL 3025813 at *2.

8

Because, as *Marshall* acknowledges, no appellate authority in Missouri has spoken on this precise issue, it is enough to find, here, that plaintiff has a colorable claim under *Filla* in that the express language of Section 213.111.1 arguably supports her position. Of course, *Marshall* also supports her position, and neither *Beisly* nor *Coleman* suggest to this Court that *Marshall* was wrongly decided. If Missouri courts should conclude otherwise, "the better practice is for the federal court not to decide the doubtful question[,] but simply to remand the case and leave the question for the state courts to decide." *Filla*, 336 F.3d at 811. Accordingly, whatever uncertainty might remain, the accrual issue must be weighed in favor of plaintiff and, thus, remand. *Block*, 665 F.3d at 948 (8th Cir. 2011) ("[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court.").

### D. Charter's Request for Jurisdictional Discovery on the Issue of Spencer's Citizenship

The parties discuss at some length the fact that plaintiff has had trouble serving Spencer, which complicates a full determination of her citizenship. Notwithstanding other issues presented in plaintiff's motion, Charter argues this Court "should delay ruling on [the] motion pending preliminary discovery regarding the citizenship of Spencer" because plaintiff merely "claims she knows Spencer is in the area, [but] has not given any rationale for that belief." Plaintiff's complaint explicitly states that Spencer is a Missouri citizen, and Charter actually concedes this fact in its notice of removal—stating "Delissa Spencer is a citizen of the State of Missouri." Yet, Charter now speculates that, even if

the rest of its argument should fail, there is some possibility that Spencer may be a non-diverse citizen notwithstanding its apparent admission.

It is within the sound discretion of the district court whether or not to allow jurisdictional discovery. *See Lakin v. Prudential Securities, Inc.,* 348 F.3d 704, 713 (8th Cir. 2003) (applying abuse-of-discretion standard in reviewing denial of jurisdictional discovery). However, a request is properly denied "when a plaintiff offers only speculation or conclusory assertions" about the need for jurisdictional discovery. *Goellner-Grant v. Platinum Equity, LLC.*, 341 F.Supp.3d 1022, 1030 (E.D. Mo. 2018) (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co.*, 646 F.3d 589, 598 (8th Cir. 2011)).

Speculation is exactly what Charter relies on in seeking jurisdictional discovery, here. The burden of proving citizenship for removal purposes lies squarely with the party seeking removal. *See Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009). Thus, to the extent Charter arrives at this Court without knowing all of the facts surrounding its basis for seeking removal—such as citizenship—it must offer a non-speculative, non-conclusory explanation articulating why jurisdictional answers elude it. In any event, it makes little difference where Spencer currently lives, which seems to be the thrust of Charter's request. Citizenship is judged at the time of the filing of a complaint. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 575-576 (2004). Plaintiff has stated in her complaint that Spencer was a citizen of Missouri at the time of filing, which Missouri law, notably, treats as a certification of one's best knowledge subject to the penalty of sanctions. *See* MO. S. CT. R. 55.03(c)(3), (d). Furthermore, Charter, itself,

suggests it may actually have some awareness of Spencer's whereabouts (or, at least, prior whereabouts) but nonetheless refuses to disclose this information because discovery hasn't yet commenced:

> Plaintiff attempts to vilify Charter for its decision not to disclose information outside of discovery for an unrepresented party. Spencer has not been employed by Charter in over a year and the parties are not currently engaged in discovery. As such, Charter cannot agree to the release of this information unless the Court finds it necessary.

(#21 at 17, n. 11.) Whether or not that concern is merited, nothing prevents Charter, itself, from using this information in an attempt to prove that Spencer is not a Missouri citizen. Under these circumstances, this Court will not exercise its discretion to order jurisdictional discovery.

### III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to remand (#14) is **GRANTED**. This matter is hereby **REMANDED** to the Circuit Court for St. Louis County, Missouri. An order of remand will follow.

**IT IS FURTHERED ORDERED** that all other pending motions are **DENIED AS MOOT**.

So ordered this 28th day of March, 2019.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE